Case number 233368, USA v. Adolphus Philpot. Arguments not to exceed 15 minutes per side. Ms. Salinas, you may proceed for the appellant. Good afternoon. May it please the court. I'm the supervising attorney from the University of Michigan Law School. I have the honor of introducing Jeb Taylor. Thank you for allowing him to argue. Thank you. Good afternoon and may it please the court. My name is Jeb Taylor and I represent the appellant, Mr. Adolphus Philpot. I've reserved three minutes for rebuttal. With my limited time today, I will focus primarily on the violation of Mr. Philpot's rights under the Speedy Trial Act. In this case, almost a full year passed between Mr. Philpot's arraignment and the start of his trial. The sole dispute in this appeal concerns 23 days of delay attributable to the district court's second grant of continuance on May 31st. What was the reason given asking for the continuance? The reason given in the motion, Your Honor, which is in the record at document 23, page ID 60 and 61, Mr. Philpot's trial counsel alluded to proceedings that he had on his docket in the Ohio State Court. However, as that state court record reveals, the trial counsel's client in that case was represented by two attorneys, and that case ended in a plea deal before reaching trial. So in this case, there was no actual scheduling conflict, let alone one sufficient to justify an ends of justice continuance. Was there a scheduling conflict when he made the motion? The problem is, Your Honor, that we don't know because neither counsel nor the court asked those questions. And I would point to this court's decision in United States versus Jason Brown. That's a 2016 decision. He's a lawyer. He's covered by Rule 11. I mean, it's not like he's lying to the court, right, about a scheduling conflict. I understand that, Your Honor. However, he didn't say that there was a scheduling conflict. He just said, I have this other case in my docket. I thought he said he had a murder trial or something scheduled two days from when this case was going to start. He had a murder on June 13th. He did, Your Honor. But there is no evidence in the record that that would have meant that counsel would have been unavailable for Mr. Philpott's trial or that counsel would have had- Two days? A murder trial? I mean, that would have been- I mean, we would be in here- If he had denied the motion, we'd be in here on a 2255 or something or 22- that he shouldn't have been representing two clients two days apart. I take that point, Your Honor. But we would argue that at any point, a defense lawyer, whether that's a public defender, private counsel, or a CJA appointment is going to have plenty of trials coming up on their schedule. And the vast majority of those are going to end in a plea deal before they reach trial. So it can't be enough to invoke- One of the things that we think about in these speedy trial act and whether it was okay to grant these continuances is the public interest, right? It's one of the things you outlined. I mean, do we look at just the interest of your client or the interest of the court? I mean, what about the interest of the defendant in the other case? I mean, there's not a plea deal yet. Doesn't this counsel need to be prepping for trial there, too? Well, I think that's exactly why we need more on the record for a district court to grant an ends of justice continuance, Your Honor, so that there is sufficient factual findings and analysis in terms of weighing those interests so that this court has something to review when it looks at the district court's order. And in this case- On to the transcript from this hearing. So when you ask for your first continuance practice, somebody can say, oh, is that really what you think or do you mean this? Well, I take that point, Your Honor. And I don't think, however, that this is one of these cases where we have appellate counsel or especially law student appellate counsel coming in and nitpicking trial counsel or trying to look for every nook and cranny that we can. And we know that's the case because Mr. Philpott himself went on the record to say that he believed that this was a violation of the Speedy Trial Act in this case. And it was counsel who said, well, I don't think that's right. But we know that Mr. Philpott was objecting to this, and so I don't think this is one of these cases where we have appellate counsel coming in with a magnifying glass and trying to find problems with what trial counsel did. I mean, are there any cases or how many cases are there where an appellate court or we've said it was error to grant the defendant's motion for continuance? I mean, I can see where we've had problems with the government saying they're not prepared. The government says, but what about when the defendant actually makes the motion? Have we ever said that that was a mistake? You have, Your Honor, and that was in the United States v. Crawford decision out of this court. And the Supreme Court in Zedner v. United States, and this is at page 501 of that decision, the court explained there that just because it's the defendant that requests the continuance, that doesn't absolve the court of its obligation to ensure that the ends of justice in granting the continuance outweigh the interests of the defendant and the public, as Judge Bloom-Katz alluded to. There's no blanket rule. I understand that from Zedner. But, I mean, there is this kind of sandbagging problem, too, right? I mean, if we start granting, if we start saying, oh, it was error, I mean, then we're going to encourage behavior. I mean, some behavior by lawyers that we probably don't want to encourage, right? I appreciate that, Your Honor. I, again, would point to this court's decision in United States v. Jason Brown, as well as the Seventh Circuit's decision in United States v. Adams, which is relied on heavily by my friend from the government in their briefing. And what the district court there did is it required counsel to say, look, I'm not going to be able to get any more continuances in my state matter, or if you hold trial on the scheduled day, there is absolutely no way that I can be there, or there is absolutely no way that I can be prepared. But in this case, where all that we know is that there was some other proceeding on the schedule, but we don't have any information about the likelihood of that case ending in a plea, or how much the trial counsel was going to prepare. Well, at the time, counsel, if you're doing defense, criminal defense work, that you will recognize that the likelihood of the case ending in a plea won't be clear until the morning trial is supposed to start. So part of what bothers me here a little bit is that you're putting something perhaps on the district, the trial court, which is a little difficult. Because the trial court is trying to juggle all these lawyers who have all these reasons, and the court doesn't ordinarily say, I don't believe any of you. I appreciate that, Your Honor. And again, we're not asking the court to disbelieve attorneys, but what we are saying is that if that was the case, the attorney could have put into his motion, he could have said, due to this other proceeding, there is no way that I will be available for Mr. Philpott's trial, or there is no way that I will be adequately prepared for Mr. Philpott's trial. But that's not what happened here. And I would again return to United States v. Jason Brown, where in the district court proceedings, counsel for both the prosecution and for the defense said, we would prefer to have a continuance due to scheduling conflicts. So let's actually go to what counsel says, right? Yeah. We're in record 23? Yes. Okay. So counsel requests this second continuance because of a scheduling conflict with a trial date of June 15th, right? Well, with a trial date. And they later say, counsel is representing a defendant in an aggravated murder case. So it's not just some proceeding. We know what it is. And we know that it's on June 13th. Right? So two days. And then they say a reasonable continuance would avert the risk of a miscarriage of justice since counsel will be in trial on another matter. Right? They're going to be working on something else. Now, I understand that the district court didn't necessarily make detailed findings on this. I mean, perhaps it's self-evident when district courts are doing all these trials, how much work goes into these things. But that's a pretty specific ask, what the other proceeding is, when it is, that it's a murder case, it's important, and connecting it to the standard that there'll be a miscarriage of justice. Even if those factual findings were sufficient, Your Honor, the court in this case did not put its analysis and its weighing of the interest on the record. What would the district court need to say then? If the district court said, yeah, I see what counsel says, I grant it. Would that be good enough? Does it have to make findings that there is indeed a trial on this other date, that we don't know when it will plea, if it'll plea? I mean, what can they? I mean, there's a little bit here. You have the details of the motion for the continuance, and the trial court says, yeah, there'll be a miscarriage of justice, or accepts it. There's a little bit of an inference that the trial court believes this counsel, and has accepted that, and has accepted it as good reasons. Your Honor, I think that the trial court certainly is entitled to incorporate findings from the motion into its order without needing to hit copy-paste from the motion into the order. But what the court can't do is grant the continuance without conducting the interest-weighing analysis. And that's what the court really failed to do here, because all it said was it alluded to the fact that maybe counsel will be unavailable, or maybe counsel won't have sufficient time to prepare. But there was no weighing of those countervailing factors of the interest that Mr. Philpott has in a speedy trial, and the interest that the public has in a speedy trial. How about Mr. Philpott's interest in having counsel prepared to actually represent him speedily? The problem is, Your Honor, that we just don't know in this case if the continuance hadn't been granted, whether that would have been the case that Mr. Philpott's counsel wouldn't have been available or wouldn't have been adequately prepared. But isn't that true in every case? Like you could post hoc decide whether a continuance should or should not have been granted based on what exactly happened. And we're not going to do that, right? I assume you agree with me on that. So why would, I mean, isn't that just kind of Monday morning quarterbacking? It's like, oh, you didn't really need it, or it turned out that you did a plea, or it turned out the judge in state court got sick and that didn't go. And we don't go back in time and then say, oh, you shouldn't have granted it then. I think to continue with your football analogy, Your Honor, I think the issue in this case is that this is like the coach having no game plan and then us coming in and Monday morning quarterbacking and saying, well, the coach didn't prepare. We don't know what the coach's plan was. And so we're kind of entitled to look back and say, well, they didn't do enough in this case. Whereas if the coach or the judge in this case had laid out the analysis on the record, there would be something for this court to sit with and to review and to defer to. But that's simply not the case here. I see my time is up. If there are no further questions, I'll be back on rebuttal. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the court. Jason Mannion on behalf of the United States. You still think it's morning to you, Mr. Mannion? Good afternoon. Why is it enough for the district court just to say, just kind of conclusorily, oh, this outweighs. Without anything else. I mean, there's nothing. There isn't really anything here about why it outweighs. I mean, I guess it seems obvious to me and maybe to everybody why it would be. But isn't there an I that needs to be dotted and a T that needs to be crossed? But I'd start from the point that this court's case law does not require long orders in response. When a court conducts this analysis, this court has described it as not requiring a novella of explanation. Here, the district court did more than simply accept the facts that were presented. It did more even than citing only the single statutory factor that defense counsel had said would justify it. Defense counsel cited only the manifest injustice factor. The district court did more than that. The district court pointed then to additional factors, including factors that dealt with attorney availability and attorney preparedness. And by doing so, I think the district court, certainly the district court did not say a lot of extra words. It didn't spell out those factors, but it cited the factors that are exactly the factors you would expect the district court to. One and two and four. Two and four are ones that the defense counsel had not cited. The district court added that to its analysis. And I think given the motion that was made, given the facts that were known to the district court, given the statutory factors the court was supposed to consider, those are exactly the factors you would expect the court to be weighing. And the court does make explicit findings, albeit short ones, that it does outweigh his interest in a speedy trial to grant him the continuance that he asked for himself. What is your understanding of how we review the failure to grant or the grant of a defense motion for a continuance? I'm struggling with this idea that, I mean, I guess it's not a blanket rule that it wouldn't be a problem when the court does it, but what's a court supposed to look at when they basically say, oh, no, I know you're asking for this and I know you have to represent your client, but no. So, and I apologize, this isn't cited in our brief. Well, I would start with what is. Alan, in our brief, Alan that is cited in our brief, specifically picks up on the idea that the district court, at least in that case, did not abuse his discretion by granting a continuance that the defendant had sought. And that picks up on an idea that's present in other of this court's case law and in case law from other circuits, where this court actually has a stronger rule that is applied in some cases, where it is said that if a defendant has requested or at least consented to delay pursuant to an ends of justice continuance, he is barred from arguing that such continuance was not in the interest of justice. And so I do think that certainly when it comes to whether the proffered reason for a continuance is a good enough reason for that continuance, this court, other courts have taken similar stances on that, refuse to look at whether such a continuance would have been justified. I don't know of case law that's... defendant himself, it looks like, didn't want the continuance, or at least it came up later. It seems odd that his own lawyer says, oh, I'm going to raise this, but I don't think it's a good argument. I mean, it seems like there's a little tension there between lawyer and client. There certainly was, and that was not the only time that that tension arose. I actually don't think there's any reason in the record to think that this continuance was the one that the defendant was disputing. If you look at the end of the trial transcript, the defendant puts on the record that he disagreed with one of the motions for a bill of particulars. I think based on the record evidence, that's the only one that we would have a reason to think that the client disagreed with it. But there's certainly no evidence to think that there was adverse interest on this particular continuance. Based on the facts that were known to the court and to the counsel at the time, and I know that that came up in the first argument, this court's case law makes clear that you have to look at it from the perspective of the district court and the counsel at the time, not through a Monday morning quarterbacking. But based on the facts known at the time, there was a risk. It didn't ultimately materialize, but there was a strong risk at the time that denying the continuance would have meant that one defendant or the other, either the state aggravated murder defendant or Mr. Philpott in this case, would be going to trial without counsel. And so I don't think there's any reason to think that Philpott would have been better off or would have objected to a continuance geared towards making sure he had present and prepared counsel. It seems like we might be in a bit of a different scenario thinking about defendants' continuance requests if there were multiple of them to deal with other scheduling conflicts with other clients, as if perhaps the attorney wasn't prioritizing this client or making room for adjudications for this client. This was pretty much besides for a continuance asking for discovery to help this client. Were there any other continuance asked for to attend to other clients as opposed to this one? No, Your Honor. Well, maybe that's not quite right. There was a final continuance that's not talked about really in the briefs, but it is discussed in what would have been a final pretrial conference transcript. And in that one, the district court grants a continuance because there was a motion that defense counsel had filed to ask the court to allow him to refer for the jury instructions and for all the evidence at trial to only be about whether he was a prohibited person under law or what type of prohibition. And in that instance, the district court granted a continuance with the consent of the defendant on the record, but granted a continuance to allow that motion to be presented and ruled upon. When they then went to reschedule the trial, it turns out defense counsel had another aggravated murder trial. And so as they were working out how long the continuance would be, there was another scheduled conflict that did come up. But the ones that are discussed in the brief, one was because he was brand new to the case. One was for this scheduled conflict. One was because of a pretrial motion that was filed. A motion that needed to be adjudicated. That's right. And so we don't think there was an abuse of discretion at all with the district court granting this continuance. When it then comes to the quality of explanation the district court gave for the continuance, we don't think that was an abuse of discretion either, and certainly it wasn't objected to. The time to object, if you think a district court has not explained its decision, particularly a decision you've asked for, but any decision, is when there's still time for the district court to fix that issue. And by not objecting to the quality of the explanation at the time of the continuance, by not objecting to the quality of explanation when the district court denied the motion to dismiss, by in fact assuring the district court. When is that? Okay, so what do you do in that situation when it was the defendant's motion? What's the contemporaneous objection? You're saying at the end, right before trial, you say, I make a motion and say, oh, I think the Speedy Trial Act was violated because you granted the motion that I made. Is that what I'm saying? Well, I think if they had a problem with the length of the order, the objection could have happened any time between the length of the order and up to when the final motion to dismiss was filed. Like right after the district court grants the motion? Like, aha, you granted my motion, I tricked you. No, no, but. Speedy Trial Act violation. I think if, no, if you think that the length of the explanation is a problem, once the order is issued, you can object to the length. By not objecting to the length. I understand that you granted my motion, but because you didn't explain it enough, what? I am a speedy, I mean, I don't understand how this will ever play out in reality where it would be like a plain, I don't know, applying plain error seems odd here. Because I don't know when this person is supposed to object, given that it was the defense who prompted the whole thing with their own motion. So on this particular fact pattern, I'm not, this particular fact pattern, which is defendant makes motion, motion is granted, there may be a Speedy Trial Act problem that we're debating on appeal, but where was trial counsel presumably has no problem with how this rolled out? I agree, but now there. So it will always be plain error? Because they're never going to object, right? To their own, to the lack of explanation or anything happening with their own motion. So that may be a reason to, if you don't like applying plain error, then maybe applying this court's approach that you just can't challenge a continuance that you yourself asked for. But Zedner says we can't do that, right? I mean, I know it doesn't say that exactly, but what Zedner is saying as well, I mean, that would essentially be prophylactically, prospectively saying no Speedy Trial Act claims, the defendant can just waive all Speedy Trial Act claims for their own actions. I don't agree with that. I think if you, Zedner makes, I think, quite clear that there's a difference between a prospective waiver, an attempt to opt out of the act for all time throughout a proceeding, and a retrospective waiver or forfeiture within that context. Isn't that what we would be doing? Like if we said, hey, we're not going to recognize this kind of claim when the defendant makes the motion, that applies forever prospectively for every defendant, not just this one, but every other defendant. I mean, aren't we making that, wouldn't we be making that rule? We'd be happy to have you resolve this case on case specific grounds. You don't need to, that's a rule that is in some of this court's case law. But I think- But even on case specific grounds, we have to know the standard we're applying in this case. Sure. And the standard, I think the way that I would suggest thinking about it is, first of all, can, contrary to the argument on the other side, can an actual documented scheduling conflict, is that a permissible basis for an ends of justice continuance? I think the answer has to be yes to that. I think the second question is then, did the district court adequately explain its reasoning for giving the continuance? And in that context, this court has many decisions saying that when you're challenging any challenge to an ends of justice continuance that a district court has granted, if you're trying to vacate a conviction after the fact for that, you have to show actual prejudice from that extension. I think you would have to do the same for any explanation error. And there just isn't any prejudice here from the district court not saying a few more words, not saying, are you sure you're going to be in trial? What are the chances you go to trial? Can you be prepared in two days for this trial? I don't think that there's no obligation for a district court to go through that extra. And even if the district court had, there's no reason to think it would have come out any other way. I'm sorry, I'm not following. You're saying there's no prejudice because there's no indication that if the district court had done more that it would have changed its mind? I think there's no prejudice to the defendant to not have the district court write twice as long of an order in granting the continuance that the defendant asked for. Is there a prejudice requirement? I mean, it's just what the statute says. You have to balance the interests. You have to make a specific finding that the interest outweighs the other one, right? Which the district court did. No, I understand that, but I guess I'm not. That one seems like kind of an either-or thing. Where does the prejudice come in? The actual prejudice requirement comes from this court's case law. I can give you some sites if you'd like, but this court says that the decision to grant a continuance and to exclude the delay is a matter of discretion for the district court and to obtain a reversal, a defendant is required to prove actual prejudice. But is that prejudice because of the decision itself? Or you're talking about because it would have come out the same way within the order itself, right? Within the four corners of the order, as opposed to the prejudice because my rights were violated in some other way. I assume that you would have to prove prejudice for any error you're alleging. And so one of the errors you're alleging is your decision to grant a continuance. Okay. No, I get it. That's fine. Anything else? If there are no further questions, we'll rest on our briefs. Okay. Thank you, Your Honor. Thank you, Counsel. Rebuttal. Thank you, Your Honor. I'd like to make two brief points in rebuttal, beginning where you left off with the government's contention that this requires a showing of prejudice. The Supreme Court in Zedner was very clear that the categorical and unequivocal language of the Speedy Trial Act, words like shall, repealed the general harmless error standard. And this court has repeatedly dismissed indictments under the Speedy Trial Act without requiring a showing of prejudice. And so that is in cases like Crane, Crawford, Howard, and Jason Brown. And in footnote three of Jason. When you look at it, there's prejudice that's out there. It's just I'm not sure how it plays out in this particular context. But, I mean, for example, if there's a Speedy Trial Act violation, you don't just automatically dismiss the indictment, right? You have to make an evaluation of what's going to happen, which is essentially what the consequence is going to be, right? So that's kind of a prejudice analysis, isn't it? Isn't that what it is? I don't think it is, Your Honor. I think that kind of analysis is made on remand by the district court when it is determining whether to dismiss with or without prejudice. And that's what this court said in footnote three. It's kind of the same inquiry, right? What was the actual harm? I think that's right, Your Honor. But in either event, the government would have to bring a new indictment to cure these deficiencies in the prosecution. But you're saying there's no prejudice analysis with regard to would a longer decision have, would the district court have changed its mind if it had done a longer decision? That's exactly right. Okay, all right. Thank you. And I want to talk a little bit about the literal compliance that is required with the statutory text here. And that's, again, what the Supreme Court reiterated in Zedner. And I think the D.C. Circuit in United States v. Bryant put it nicely, and that's cited in our most recent 28-J correspondence, where the D.C. Circuit said, in the context of the Speedy Trial Act, implicit findings are insufficient to invoke an ends of justice continuance. And that is exactly what the government is asking you to do here, to look at the district court's short, bare-bones order and say, well, here's what I think was going on in the district court's mind when it made this decision. But that is simply not enough under the Speedy Trial Act. Go ahead. No, no, no. Go ahead. Did the district court mention the scheduling conflict? It wasn't totally conclusory, right? It wasn't just like, I think the ends of justice, blah, blah, blah. Did it mention a scheduling conflict? I don't remember the exact wording that the district court used, Your Honor, but it did reference the facts in defense counsel's motion. So it said something like, defense counsel has represented to the court that counsel has a trial scheduled on this date. The court had gone on to say, under the general principles of physics, it's very difficult to be in two places at one time, so therefore I'm going to find that since counsel can only be at one place at one time, I'm going to grant this continuance so that the interests of justice are served. Would that have been enough? I think that would have been enough, Your Honor. At least that would have been a factual finding that counsel would have been unavailable for Mr. Philpott's trial, and that would have tracked the statutory factors that are enumerated in subparagraph H7B. But even in that case, even if that would be a closer call, it would still be lacking in the interest weighing that is required by the act between the continuance on one hand and the speedy trial on the other, and the various interests that are implicated there, from counsel's interest to the client's interest, which may be different from counsel's, which both may be different from the public's interest in a speedy trial. And that's why we require an on-the-record analysis, because there are so many varied interests at play here. Thank you, Your Honors. Thank you. Thank you, counsel. Thank you, Mr. Taylor. Thank you to the Michigan Law students and your colleagues for your work in this case and taking this case, and we always appreciate it when you all do that. So thank you very much. So the case will be submitted, and I think that's our last case.